**MAU MAU, JR., Petitioner**

**v.**

**SOLIAI TUIPINE FUIMAONO, as Chief Election Officer, and LETUMU TALAUEGA, Respondents**

High Court of American Samoa
Appellate Division

AP No. 18-94

December 1, 1994

Before KRUSE, Chief Justice, RICHMOND, Associate Justice, VAIVAO, Associate Judge, and ATIULAGI, Associate Judge.

Counsel:      For Petitioner, Aviata F. Fa`alevao
For Respondent Chief Election Officer, Malaetasi M. Togafau, Attorney General, and Elvis R.P. Patea, Assistant Attorney General
For Respondent Letumu Talauega, Togiola T.A. Tulafono

Order for New Election:

## HISTORY

On November 8, 1994, respondent Letumu Talauega ("Talauega"), the incumbent, received three more votes than petitioner Mau Mau, Jr. ("Mau"), the challenger, in the election to represent District No. 6 in the American Samoa House of Representatives. On November 14, 1994, Mau petitioned this Court, pursuant to A.S.C.A. § 6.0902, naming Chief Election Officer Soliai Tuipine Fuimaono ("CEO") and Talauega as respondents, alleging irregularities and improprieties in the administration of the election, and calling for a new election. This Court has jurisdiction over this action under A.S.C.A. § 3.0208(c). The Court heard this matter on November 23, 1994, with all parties and their counsel present.

## DISCUSSION

We will first address the issue of election fraud arising from Talauega's presentation of money in varying amounts to four members of the Afono village council. Three of the four village council members voted on election day in District No. 6. Mau alleges that the money was presented in an effort to secure the individual votes and public support of the village council members in the election. A.S.C.A. § 6.1203 states, in relevant part:

The following persons are guilty of election fraud:

45

(1) every person who directly or indirectly, personally or through another, gives, procures, or lends, or agrees or offers to give, procure or lend, or who endeavors to procure any money or . . . valuable consideration to or for any qualified elector in order to induce any qualified elector to vote . . . for any particular person;

(2) every person who advances or pays, or causes to be paid, any money to, or to the use of, any other person, with the intent that the money, or part thereof, shall be expended in bribery in an election, or for any purpose connected with or incidental to any election;

Weeks after Talauega had filed to run for office, he made his presentation of money to the Afono village council. The next day Talauega formally began his campaign. Further, Talauega made the presentation only in Afono, which was the pivotal village in the election, since it was the home village of neither candidate and had a large number of votes at stake.

■ Although Talauega ably argued that his presentation was in accordance with Samoan custom, we find that it contravenes the law. Where law and custom conflict, the law prevails. A.S.C.A. § 1.0202; *In re Matai Title Sotoa*, 6 A.S.R.2d 91, 94-95 (Land & Titles Div.1987). There are many potential ways in which a representative could manifest his appreciation for the support of his constituents without presenting money to selected villages or council members with an election immediately impending. Three of the four village council members who received the presentation were qualified electors and ultimately voted. We find that Talauega's presentation to the Afono village council amounted to election fraud as defined by A.S.C.A. § 6.1203.

A.S.C.A. § 6.0902 lists "provable fraud . . . that could cause a difference in the election result" as a cause for contesting an election. A.S.C.A. § 6.0903(c) permits the court to invalidate an election for one of two reasons. First, invalidation is proper if "a correct result cannot be ascertained because of a mistake or fraud on the part of the district or election officials." No fraud is present on the election officials' part.

■ The second reason to invalidate an election is that "it cannot be determined that a certain candidate, or certain candidates, received a majority or plurality of votes cast and were elected." Although the first reason expressly requires proof of fraud by an election official, the second reason is broader and may allow the court to invalidate an election based

on "provable fraud" by candidates or electors "that could cause a difference in the election result," as well as any other illegality which would make the election result uncertain. A.S.C.A. § 6.0902.

■ Fraud on the part of an elector, or a candidate with respect to an elector, has long been held a sufficient ground to invalidate that elector's ballot rather than vitiating the entire election. *Attorney General v. Miller*, 253 N.W. 241, 243 (Mich. 1934).

It is well settled that all votes obtained by paying, giving, or offering to pay or give anything of value to electors are, upon proper proof, to be rejected by the court in a contest.. But the votes of those who neither directly nor indirectly participated in the bribery or unlawful agreement, and who are not the recipients of any benefits of the unlawful conduct of one who attempts to influence corruptly any election, are not to be rejected. *Blackwell v. Newkirk*, 121 P. 260, 263 (Okla. 1912).

Since Talauega's margin of victory is three votes, a showing that three ballots are invalid by reason of fraud is adequate to render it impossible to determine which candidate received a plurality. For this reason we do not speculate as to how many other qualified electors in Afono may have indirectly received the fruits of Talauega's presentation of money. Invalidating the votes of the three members of the village council, we find that the outcome of the election in District No. 6 is uncertain.

We acknowledge Talauega's testimony that Mau had earlier given money to members of the Afono village council. This fact, however, does not dilute the importance of election fraud on Talauega's part, nor does it somehow make the outcome of the election any more certain than it would have been if Talauega had unilaterally committed election fraud.

Mau has made eight additional challenges which we will address individually.

## 1. Siuta Siuta

Siuta Siuta is an elderly resident and qualified elector in District No. 6. On November 4, 1994, he voted at home by a local absentee ballot with the assistance of an election official and in the presence of Siuta's spouse, a representative of Mau, and the Sailele village pulenu`u. The CEO issued a letter on election day authorizing Siuta to vote in District No. 6.

At his home, Siuta told the election official that he desired to vote for

Talauega, but instructed the official to mark box #1 which corresponded to Mau. Siuta's wife then corrected Siuta, and box #2 corresponding to Talauega was marked. Siuta's vote has been counted. Mau challenges the validity of Siuta's vote on the basis that: (1) Siuta's ballot was marked by an election official and not by Siuta himself, (2) Siuta was not registered as an absentee voter, and (3) others present influenced Siuta's vote.

As to the first issue, Siuta is clearly qualified to receive assistance in marking his ballot pursuant to A.S.C.A. § 6.1101(b) which allows "any qualified elector by reason of physical disability to receive assistance in marking [his/her ballot]." The election official who marked the ballot testified that Siuta's hands were shaky, and that she was fearful that he would spoil the ballot by marking outside of the proper area. The official further testified that Siuta's signature on the outside of the ballot was unintelligible, which confirmed her judgment that Siuta was incapable of intelligibly marking his own ballot.

As to the second issue, it is unclear whether Siuta requested his absentee ballot less than 75 days and more than 15 days prior to the election as required by A.S.C.A. § 6.1102(a). He did, however, vote in 1992 in District No. 6 by a local absentee ballot. Further, "[q]ualified electors unable to appear at the polls on election day for . . . physical . . . reasons" are permitted to vote by absentee ballot, "in a manner as may be prescribed by rules adopted by the chief election officer." A.S.C.A. § 6.1101(b). This requirement is less restrictive than that required of voters who are absent from their voting districts as outlined in A.S.C.A. § 6.1101(a). The latter requirement subjects voters absent from their voting districts to the requirement of A.S.C.A. § 6.1102, which states that absentee ballots must be requested between the seventy-fifth and fifteenth day prior to the election.

In contrast, A.S.C.A. § 6.1101(b) gives the chief election officer the power to promulgate rules to accommodate the needs of local absentee voters who, for several specific reasons, are unable to appear at the polls. While no formal rules have been promulgated, the CEO in writing authorized Siuta to vote in District No. 6. Although this letter did not expressly authorize a vote by local absentee ballot, we infer that intention since Siuta was allowed to vote in that manner in 1992 and again in 1994.

This court is concerned, however, that no formal rules have been adopted to govern procedures for requesting and collecting local absentee ballots pursuant to A.S.C.A. § 1101(b). Our decision to allow Siuta's vote to count should not be read to allow unbridled discretion to the chief election

officer in the absence of rules. We merely uphold his decision in this case because it was so clear that Siuta was a qualified elector and that he had previously voted by local absentee ballot.

As to the issue of others present, Siuta was clearly qualified to receive such assistance in marking his ballot pursuant to A.S.C.A. § 6.1101(b) which allows "any qualified elector by reason of physical disability to receive assistance in marking [his/her ballot]." ■ This provision does not place limitations on who may assist the disabled voter. The correction by Siuta's wife instructing the election official to mark box #2 was merely to assist Siuta in voting for the candidate that he had already expressed his intention to support in the presence of the election officer.

A.S.C.A. § 6.0709 permits any illiterate, blind, or physically disabled voter to seek the aid of two district officials or another qualified elector, which could potentially include his spouse, if marking his ballot is unduly burdensome. This section applies only to the "polling place" or within 100 feet thereof. Although Siuta's house is not a "polling place," we look to this section for persuasive guidance that others may assist an elector in casting his/her ballot.

We are concerned that a campaign worker was present in the room while Siuta voted. Such presence is likely to be unduly influential to the voter and invade the privacy provided for by the Revised Constitution of American Samoa, Article II, § 4, which requires that "Representatives shall be chosen by secret ballot." In this case, we allow Siuta's vote to count since his intention to vote for a particular candidate was clear from the beginning, and the worker was Mau's representative. Moreover, since Mau did not raise the "secret ballot" issue, we decline to further comment on that issue at this time.

*2. Terina Tuinei*

Terina Tuinei arrived at her District No.6 polling place at 6:15 a.m. on election day. Despite A.S.C.A. § 6.0701 requiring open polls from 6:00 a.m. to 6:00 p.m., the ballots did not arrive at this polling place until about 7:20 a.m., more than an hour late. She had to leave the polling place to attend school, but returned at 6:20 p.m. and, after some discussion and an initial denial, she was permitted to vote due to the late arrival of the ballots. Her vote was sealed and marked "challenged" and was not counted until after the CEO's approval.

■ A.S.C.A. § 6.0701 requires that the polls shall be kept open no later

49

than 6:00 p.m., referring to that time as the "prescribed hour" stating, "No qualified elector shall be permitted to enter or join the line after the prescribed hour for closing the polls." Accordingly, we are required to disqualify Tuinei's vote. Although this result is unfortunate, it is what the law demands. The statute does not permit interpretations and exceptions which are not explicitly provided. One exception is specifically provided when, because of overcrowding, qualified electors are standing in line outside the polling place at 6:00 p.m. *Id.* The Legislature could easily have included other exceptions if it had intended them. Since the one lawful exception does not apply to the facts at hand, Tuinei's vote is invalid, regardless of when the polls opened. This fourth discounted vote adds to the uncertainty of the election result.

### 3. Silivelio Iosefo

Silivelio Iosefo voted in District No. 6 and his vote was later challenged on the assertion that he did not reside in the district. A.S.C.A. § 6.0223 provides different requirements for challenging an elector's qualifications prior to election day, on election day, and after the elector casts his/her ballot. Although Mau alleges that Iosefo's attempt to vote was challenged at the polling place, the evidence does not support any such finding. By contrast, the CEO's letter of November 14, 1994, indicates that no challenge to Iosefo was entered at the polling place, but instead was entered on November 10, 1994, in Mau's letter to the CEO, two days following the election.

When a challenge to an elector's qualifications is first entered after the elector has cast his/her ballot, A.S.C.A. § 6.0223(d)(3) provides:

> It is a condition of any relief granted under this subsection that the complaining party plead and prove, by a preponderance of the evidence, that the facts alleged in support of the complaint were not known to him, and could not with due diligence have been discovered, prior to the challenged elector casting his ballot.

Mau admits that he had voter registration lists, in which Iosefo's name appeared as registered to vote in District No. 6 in 1994 and as having voted there in 1992, in his possession prior to the election. Conversely, we have no evidence before us which sustains Mau's burden to demonstrate that he had no way, by due diligence, of discovering the facts alleged in the complaint prior to the election. Since this burden is not sustained, the issue of Iosefo's eligibility is moot.

50

### 4. *Tauaitia Aiaiva*

Prior to the election, Mau requested that the CEO mail an absentee ballot to Tauaitia Aiaiva, who was attending school in San Francisco. In his November 10 letter to the CEO, Mau questioned whether the ballot had been sent and received. We need not consider whether Aiaiva had the opportunity to vote as an absentee, since the voter rolls in evidence reflect that he was in the territory and cast his counted vote on election day.

### 5. *Sifia Mataafa*

Sifia Mataafa cast her ballot at the LBJ Tropical Medical Center on election day as a local absentee voter. Mau expressed concern in his November 10 letter to the CEO that Mataafa's vote was not properly delivered and counted. However, the election rolls indicate that Mataafa voted by local absentee ballot on election day. The ballot was later opened and counted.

### 6. *Punipuao Tiati`u*

Although Punipuao Tiati`u presented a 1992 voting list in her possession which contained her name and her passport, she was denied the opportunity to vote because her name did not appear on either the 1994 or 1992 voting lists in possession of the district election officials. In response to Mau's challenge to this decision, the CEO admits that Tiati`u's name is on the official roll of registered voters for 1992 and was inadvertently left off the 1994 list. The CEO offers no excuse, but indicates that if Tiati`u had come to the election office on election day, she would have been permitted to vote. Since she did not take this action, and in fact testified in this court that she had conceded not to vote, this court is not required to take any further action.

### 7. *Iakopo Taamu*

Mau challenged Iakopo Taamu's registration in District No. 6, based on his residence in Hawaii and his 1992 registration in District No. 12. However, in a decision dated November 5, 1994, the CEO had concluded that Taamu was not a bona fide resident of District No. 6, and officially denied him the right to vote there in the 1994 election. Although Taamu's ballot was received by the election office, it was disqualified and not counted, and is not part of the election result. We sustain the CEO's decision, but it does not alter the official vote count.

## 8. *Sina Felise*

■ Sina Felise is Talauega's niece. Mau challenges her votes because Talauega gave money to Felise prior to election day. Discounting of votes based on election fraud, however, requires proof that money or other consideration was given "to induce any qualified elector to vote . . . for any particular person." A.S.C.A. § 6.1203. In this case, Felise actually requested the money from Talauega, and Talauega provided her with money before and on this occasion to help her as a member of his family and not in an effort to solicit votes.

## CONCLUSION

Four votes must be discounted, three cast by members of the Afono village council and the vote after 6:00 p.m. Discounting those four votes against a margin of three votes renders the election result uncertain. The petition must be granted, and the election is therefore invalidated.

A copy of the judgment entered in this matter shall be served upon the Governor, so that he may duly call a new election to be held no later December 8, 1994.

It is so ordered.